# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

_____

## No. 16-1062

_____

## TERRANCE FOWLER,
**Appellant**

**v.**

## SUPERINTENDENT SMITHFIELD SCI, ET AL.,
**Appellee**

_____

**Appeal from an Order Dated December 18, 2015,
Dismissing Petition for Writ of Habeas Corpus**

_____

**Brief for Appellant and Appendix Volume I, pp. 1 - 22
(Volume I of II)**

_____

_____

**Diana Lynn Stavroulakis, Esq.
PA ID# 59255
262 Elm Court
Pittsburgh, PA 15237
(412) 600-8608
Diana@Stavroulakislaw.com**

**Attorney for Appellant
Terrance Fowler**

# TABLE OF CONTENTS

Table of Authorities…………………………………………    3

Statement of Jurisdiction…………………………………    4

Statement of Related Cases and Proceedings………………    4

Statement of the Issues…………………………………..    5

Statement of the Case……………………………………    7

Summary of the Argument…………………………………    11

Argument…………………………………………………..    15

    I.    Trial Counsel Was Ineffective Because No Reasonable
    Strategy Supported Failure To File Motion To Suppress
    Identification. ………………………………….    12

    II.    Fowler Established Prejudice Under *Strickland* Standard
    Where Trial Counsel's Failure To File Motion To Suppress
    Identification Undermined Reliability Of The Verdict.    20

    III.    If Review Of Trial Counsel's Stewardship
    Is Not Possible On Undeveloped State Court Record, Remand
    For An Evidentiary Hearing Is Warranted.    ……    30

Conclusion ……………………………………………….    31

Combined Certifications………………………………….    32

# TABLE OF AUTHORITIES

**Cases**:

*Commonwealth v. Carter*, 643 A.2d 61  (Pa. 1994). ………….. 16

*Commonwealth v. Enimpah*, 106 A.3d 695 (Pa. 2014) ………. 22

*Cullen v. Pinholster*, 563 U.S. 170  (2011). ……………………. 13

*Harrington v. Richter*, 562 U.S. 86  (2011) ……………………. 14

*Kimmelman v. Morrison,* 477 U.S. 365 (1986) …………… …. 22

*Lambert v. Blackwell*, 387 F.3d 210 (3d Cir. 2004) …………… 13

*Manson v. Brathwaite*, 432 U.S. 98 (1977) …………………… 24

*Marshall v. Hendricks,* 307 F.3d 36 (3d Cir. 2002). ……….… 31

*Neil v. Biggers*, 409 U.S. 188 (1972) ………………………… 23

*Palmer v. Hendricks,* 592 F.3d 386 (3d Cir. 2010). …………… 6

*Rey v. Fulcomer,* 974 F.2d 348 (3d Cir. 1992),

   *Cert denied* 507 U.S. 954, 113 S.Ct. 1368 (1993)………… 21

*Rodriguez v. Young*, 906 F.2d 1153 (7th Cir. 1990) ……………… 20

*Saranchak v. Beard,* 616 F.3d 292, 301 (3d Cir. 2010).  ………… 6

*Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361(3d Cir. 2002) …….. 13

*Strickland v. Washington,* 466 U.S. 668 (1984) ……………..…… 13

*Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005). ………………… 5

**Statutes:**

28 U.S.C. §1291 ……………………………………………… 4

28 U.S.C. §2241 ……………………………………………… 4

28 U.S.C. §2253 ……………………………………………… 4

28 U.S.C. §2254 ……………………………………………… 4

42 Pa.C.S. §9541, et seq. ……………………………………… 9

**Rules:**

Pa. Rule of Criminal Procedure 581 ………………………… 22

**Miscellaneous:**

Sixth Amendment to the United States Constitution…………… *passim*

Fourteenth Amendment to the United States Constitution …… *passim*

## JURISDICTIONAL STATEMENT

Appellant Terrance Fowler (hereinafter "Fowler") is a person in custody pursuant to a judgment of a court of the Commonwealth of Pennsylvania, in violation of the Constitution of the United States.  The District Court exercised jurisdiction over Fowler's *habeas* petition under 28 U.S.C. § 2241 et. seq.; 28 U.S.C. §2254.

The Third Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291, 2253.   This is an appeal of a final order in a *habeas* corpus proceeding under 28 U.S.C. § 2254 in a federal district court. This Court issued a Certificate of Appealability in this matter on October 6, 2016.  (App. 2)[1]

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel is not aware of any related cases or proceedings before this Court.

---

[1]"App. _____" denotes references to specific pages in the Appendix.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

I.      Trial Counsel Was Ineffective Because No Reasonable
Strategy Supported Failure To File Motion To Suppress
Identification.

II.      Fowler Established Prejudice Under *Strickland* Standard
Where Trial Counsel's Failure To File Motion To Suppress
Identification Undermined Reliability Of The Verdict.

III.      If Review Of Trial Counsel's Stewardship
Is Not Possible On Undeveloped State Court Record, Remand
For An Evidentiary Hearing Is Warranted.

**PRESERVATION OF ISSUES**

The issue of trial counsel's ineffectiveness is within Fowler's *pro se*

filings in the District Court, under 28 U.S.C. §2254, (App. 104-118);

reviewed in the Magistrate Judge's Report and Recommendation (App. 4-

22); and denied by the District Court Order. (App. 3)  This Court's

Certificate of Appealability encompasses the issues, stating: (App. 2)

> The appellant's request for a certificate of appealability is
> granted as to his claim that he was denied the effective assistance of
> counsel by his trial counsel's failure to file a motion to suppress an
> identification, as he has made "a substantial showing of the denial of
> a constitutional right." See Thomas v. Varner, 428 F.3d 491, 502-03
> (3d Cir. 2005). His request is denied as to his other claims because
> he has not made the requisite showing as to them. 28 U.S.C.
> §2253(c)(2). Appellant has otherwise not shown that counsel
> provided ineffective assistance. See Branch v. Sweeney, 758 F.3d
> 226, 233 (3d Cir. 2014); United States v. Bui, 795 F.3d 363, 366-67
> (3d Cir. 2015).

## SCOPE AND STANDARD OF REVIEW

Since the District Court denied Fowler's *habeas* petition relying on the state court record, without conducting an evidentiary hearing, the Third Circuit Court of Appeals has plenary review.  *Palmer v. Hendricks,* 592 F.3d 386, 392 (3d Cir. 2010).  On appeal, this Court applies the same standard as the District Court.  28 U.S.C.A. § 2254(d); *Saranchak v. Beard,* 616 F.3d 292, 301 (3d Cir. 2010).

## STATEMENT OF THE CASE

Fowler appeals the District Court's December 18, 2015, Order

denying his §2254 *habeas corpus* petition.  (App. 4).  This Court granted a

Certificate of Appealability on October 6, 2016.  (App. 3)

### A. Relevant Facts of the Underlying Conviction

On appeal from the denial of Fowler's request for post-conviction

collateral relief, the Superior Court of Pennsylvania summarized the facts

established during the Jury Trial, as follows:

> Aleksandr Cheremnykh testified that on July 7, 2010, he
> owned and was working at a jewelry store when two masked
> men came in wielding guns. One pointed a handgun at him
> and ordered him to open the safe. When he refused, the
> perpetrator shot him in the chest. The two men took several
> silver certificates and keys to the display shelves.
> Bruce Wagner, who lived around the corner from the
> jewelry store, testified that at approximately 10:50 a.m. on
> July 7, 2010, he observed Fowler, who was driving a green
> four-door car, park near his house. Fowler and his
> accomplice walked in the direction of the jewelry store, and
> returned to the car roughly 10 minutes later and drove away.
> Fowler and his accomplice returned five minutes after that
> and again parked in about the same spot. The men again
> walked in the direction of the store. When the men walked
> away, Wagner ran out of his house and wrote down the
> license plate number on the car. The men came running ack
> to the car approximately 15 minutes later and again drove
> away from the area.
> Wagner turned on his scanner and learned the nearby
> jewelry store had been robbed. He flagged down a police
> officer he saw driving by in a marked cruiser and gave the
> officer his written description of the men he saw and their
> vehicle. The officer looked around the area and found a five-

dollar silver certificate in the area where the car had been
parked.

　　Police went to Fowler's house on July 7, 2010 at
approximately 1:00 p.m. They observed a green four door
vehicle in the driveway bearing the same license plate
number that Wagner had reported. When asked, Fowler told
police that he had been in control of the car all day.

　　Fowler's father, James Fowler, testified that he and
Fowler shared a residence. According to James Fowler,
Fowler left the house between 8:00 and 8:30 a.m. to take his
fiancée to work and daughter to daycare. Although he was
not certain, he did not believe he was gone for more than an
hour. He further testified that when the police came to the
house, Fowler had only been home for less than an hour.
Fowler's cousin, Tabet Vaughn, testified that Fowler has a
reputation for being peaceful, quiet and loving, good family
guy.

(App. 87-89)(quotations and transcript citations excluded)

## B. Procedural History and Disposition in Pennsylvania State Court

On July 14, 2011, Fowler proceeded to a Jury Trial in the Court of

Common Pleas of Erie County, Pennsylvania. (App. 265-506) The

Honorable Shad Connelly presided.  The Jury returned a guilty verdict as to

all counts on July 15, 2011.  (App. 503-504)

Fowler was sentenced on September 20, 2011, to an aggregate term of

27 ½ to 55 years imprisonment, and he filed a timely direct appeal. On June

1, 2012, the Superior Court affirmed the judgment of sentence at 1787 WDA

2011.

On April 16, 2013, Fowler filed a timely *pro se* petition pursuant to the Post Conviction Relief Act.[2] (App. 23-58)  Following the appointment of counsel, a Supplemental Petition was filed on May 20, 2013. (App. 59) On June 20, 2013, the Commonwealth filed its Response. (App. 64) The following day, the PCRA Court filed a Notice of Intent To Dismiss without an evidentiary hearing on June 21, 2013. (App. 72-73)  Fowler filed Objections to the Court's Notice of Intent to Dismiss on July 8, 2013. (App. 74-80) The PCRA Court filed a final Order denying PCRA relief on July 17, 2013. (App. 81)

A timely Notice of appeal was filed August 14, 2013. (App. 82) The case proceeded to the Superior Court of Pennsylvania, at 1330 WDA 2013. On March 3, 2014, a panel of the Superior Court filed a Memorandum and Order affirming the Order of the PCRA Court. (App. 87-103)

### C.     Procedural History and Disposition in District Court

On May 23, 2014, Fowler filed a Petition for Writ of *Habeas Corpus* in the United States District Court for the Western District of Pennsylvania. (App. 104-118) The Erie County District Attorney's Office, representing the Commonwealth, filed an Answer on September 11, 2014. (App. 119). Fowler filed a Reply on October 14, 2014. (App. 133-161)

---

[2] The Post Conviction Relief Act is hereafter referred to as the PCRA, which is found at 42 Pa. C.S. §9541 et seq.

Magistrate Judge Susan Paradise Baxter did not conduct an evidentiary hearing, but filed a Report and Recommendation (R&R) on November 2, 2015, concluding that the petition should be denied. (App. 4-22) Fowler filed Objections to the R&R on December 16, 2015. (App. 162-172)

Senior District Judge Terrence F. McVerry filed a Memorandum Order on December 18, 2015, denying the habeas petition. (App. 3) Fowler filed a timely Notice of Appeal to this Court on January 8, 2016. (App. 1) A panel of this Court issued a Certificate of Appealability on October 6, 2016. (App. 2)

This honorable court granted a Certificate of Appealability which was filed on August 26, 2010. (App. 2)  Present counsel was appointed to represent Fowler before this Court.  This counseled brief follows.

## <u>SUMMARY OF THE ARGUMENT</u>

The Pennsylvania Court determined, and the Commonwealth concedes, that Wagner's identification of Fowler was impermissible suggestive. There is no sound legal strategy that could support trial counsel's failure to file a motion to suppress this identification. Trial Counsel's failure to file a suppression motion was objectively unreasonable.

Fowler was prejudiced by trial counsel's ineffective assistance. A suppression motion would have been granted given these facts. In the absence of Wagner's identification, there is a reasonable likelihood that Fowler's trial would have had a different outcome.

Fowler's arguments are made based upon facts found in the trial transcripts. Trial counsel's testimony is not of record because the state PCRA Court denied Fowler's request for an evidentiary hearing, as did the District Court when reviewing the underlying *habeas* petition. If the Court finds that the record had not been developed, the case should be remanded to the District Court for an evidentiary hearing.

## I. TRIAL COUNSEL WAS INEFFECTIVE BECAUSE NO REASONABLE STRATEGY SUPPORTED FAILURE TO FILE A MOTION TO SUPPRESS IDENTIFICATION.

## A. STANDARD OF REVIEW

For all three issues presented, the Court's standard of review is the same and will be applied in each argument. Since the District Court denied Fowler's *habeas* petition relying on the state court record, without conducting an evidentiary hearing, the Third Circuit Court of Appeals has plenary review. *Palmer v. Hendricks,* 592 F.3d 386, 392 (3d Cir. 2010). On appeal, this Court applies the same standard as the District Court. 28 U.S.C.A. § 2254(d); *Saranchak v. Beard,* 616 F.3d 292, 301 (3d Cir. 2010).

Moreover, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-
>
>> (28)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a state court proceeding.

28 U.S. C. §2254(d).  In this case, the PCRA Court, and thereafter the Pennsylvania Superior Court, denied Fowler's request for post-conviction collateral relief on the merits. The District Court could only grant relief as set forth in §2254(d)(1)&(2). This is a deferential standard, requiring the review to be conducted while affording rulings of the state court the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181-182 (2011).

State court factual findings, including implicit findings, must be treated as correct unless clear and convincing evidence is offered to establish that those factual findings have been erroneous. *See, e.g.*, 28 U.S.C. § 2254(e)(1); *Lambert v. Blackwell*, 387 F.3d 210, 252 n.34 (3d Cir. 2004); *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

An allegation of the denial of the guaranteed Sixth Amendment right to effective assistance of counsel in criminal proceedings is proven using the two-prong federal standard announced in *Strickland v. Washington,* 466 U.S. 668 (1984).   Ineffectiveness is proven by establishing that: 1) counsel's

performance was deficient; and 2) this deficient performance resulted in prejudice to the claimant. *Id*. at 687. The first prong, which requires a demonstration that counsel's representation was deficient, will be established within the argument for Issue I.  The second prong, which requires a showing that this deficient performance resulted in prejudice, will be established within the argument for Issue II.

## C. TRIAL COUNSEL'S PERFORMANCE WAS UNREASONABLE AND SATISFIES THE FIRST PRONG UNDER *STRICKLAND*

Deficient performance will be proven if counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-688.  Counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) citing *Strickland*, 466 U.S. at 687.

The presumption is that counsel's stewardship falls within a wide range of reasonableness. *Strickland,* 466 U.S. at 689. A successful challenge to counsel's assistance must rebut that presumption. *Strickland,* 466 U.S. at 689. This will be accomplished through a showing "either that: (1) the suggested strategy (even if sound) was not in fact motiving counsel or, (2) that the actions could never be considered part of a sound strategy." *Thomas*

*v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).  Since the PCRA Court denied

Fowler's request for collateral relief without conducting an evidentiary

hearing, and the District Court did not grant an evidentiary hearing, trial

counsel never testified to explain why he didn't file the motion to suppress.

Consequently, Fowler's argument relies on trial transcripts to demonstrate

that trial counsel's failure to file a motion to suppress, in this factual

scenario, could never been considered part of sound legal strategy.


## D. THE COMMONWEALTH CONCEDED THAT THE IDENTIFICATION WAS IMPERMISSIBLE

The Commonwealth concedes in its Answer to Fowler's *habeas*

petition that it was an impermissible suggestive identification. (App. 130)

The Commonwealth pointed out that "Bruce Wagner ("Wagner") first

identified [Fowler] at his preliminary hearing after Wagner had watched a

news program that showed [Fowler] in handcuffs after being arrested for the

robbery and related crimes."  (App. 130) The Commonwealth added that

"Wagner had also seen [Fowler] at a previously scheduled preliminary

hearing and knew he was one of the persons charged in the incident." (App.

130) In conceding that the identification provided by Wagner was suggestive

and therefore impermissible, the Commonwealth implicitly concedes that

trial counsel's failure to file a motion to suppress the suggestive

identification was unreasonable.

## E. THE PENNSYLVANIA SUPERIOR COURT DETERMINED THAT THE IDENTIFICATION WAS IMPERMISSIBLE

On appeal from the PCRA Courts denial of Fowler's request for

collateral relief, the Pennsylvania Superior Court determined that the PCRA

Court committed legal error in its summary dismissal of this claim by failing

to consider the requisite factors on a challenge to an impermissible

suggestive identification, as established under Pennsylvania law. *See*

*Commonwealth v. Carter*, 643 A.2d 61, 71 (Pa. 1994). The Superior Court

rejected the PCRA Court's determination, and conducted its own review of

that identification, in light of the appropriate standard. (App. 98-99)

The Pennsylvania Court reviewed the record, highlighting the

following:

> The record reflects that Wagner identified Fowler for the first time at his preliminary hearing. N.T. 7/14/11, at 78, 80. Between the time of the robbery and the initial identification, Wagner watched a news program that depicted Fowler, in handcuffs, being arrested for the crimes at issue. *Id*. at 79-80. The record further reflects that Fowler's preliminary hearing was continued, and on at least one occasion, Wagner saw Fowler at the Magistrate's office and knew he was one of the individuals charged. *Id.* at 80-81. Thus, as in *Carter,* Wagner's subsequent identification of Fowler was an "impermissible suggestive identification." *Carter,* 643 A.2d at 71.
>
> ....

Furthermore, Wagner misidentified Fowler's accomplice and testified at the preliminary hearing that he was as certain of his identification of Fowler as he was of Fowler's accomplice. *Id.* at 83-84.

(App. 98-99)(Superior Court's citations refer to pages in Trial Transcript)

Considering the information of record and the relevant factors, the Pennsylvania Superior Court determined that the identification was impermissible.

## F.  THE DISTRICT COURT DEFERRED TO THE STATE COURT'S DETERMINATION THAT IT WAS AN IMPERMISSIBLE SUGGESTIVE IDENTIFICATION

In the District Court, the Magistrate Judge deferred to the Pennsylvania Superior Court's rulings under the standard outlined in the AEDPA. (App. 11-12) The Magistrate Judge's R&R noted that the PCRA Court did not hold an evidentiary, and that trial counsel never testified as to why he didn't file a motion to suppress. (App. 16-17) The District Court accepted the Pennsylvania Superior Court's determination that the identification was impermissible and noted that the state court resolved the ineffectiveness claim by concluding that that Fowler could not establish prejudice. (App. 17)

True enough, the Pennsylvania Superior Court ultimately did conclude that Fowler could not establish prejudice, which Fowler addresses in Issue II. However, the state court first determined that Wagner's

identification was impermissible which implies trial counsel's substandard

performance in failing to file a motion to suppress.

## G. NO POSSIBLE SOUND STRATEGY COULD SUPPORT TRIAL COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS THE IDENTIFICATION IN THIS CASE

Even without trial counsel's testimony to explain his failure to file a

motion to suppress the identification, trial counsel's performance was

objectively unreasonable in this factual situation because there is no possible

sound strategy that could support the failure to file a suppression motion

given these facts. It is uncontested that Wagner's identification was

impermissible and suggestive. Wagner's identification of Fowler was the

crux of the Commonwealth's case against him. Trial Counsel had no

reasonable basis not to move to have the identification suppressed, when

there was no other evidence placing Fowler inside the jewelry store during

the robbery.

The jewelry store owner, Aleksandr Cheremmykh, did not identify

Fowler. Cheremmykh was alone in the store when it was robbed. (App. 177)

He didn't notice the actors until they were inside the store. (App. 208) He

couldn't identify the actors because they wore ski masks and glasses

covering their eyes, and could only offer that they were African American.

(App. 178-179) He didn't see where the actors went after leaving the store,

as he did not chase after them or follow where they went. (App. 187-188) The jewelry store owner was the only witness to the robbery, and his testimony did not implicate Fowler.

The Third Circuit has stated "that failure to move to suppress or otherwise object to an in-court identification by the prosecution's central witness, when there are compelling grounds to do so, is not objectively reasonable representation, absent some informed strategy." *Thomas* at 501. Trial Counsel could not have had any reasonable trial strategy designed to advance Fowler's interests that could support a failure to file a motion to suppress the identification testimony. There is no alternative trial strategy that would achieve the same result as having that identification suppressed. It is not enough that trial counsel cross-examined Wagner to attack his credibility. In fact, in a similar fact pattern, this Court has determined "that the purported strategy-allowing the identification in order to cross-examine [the witness] about the improper police efforts in obtaining the identification – does not even appear to be reasonable. Even if the identification was never made or was suppressed, counsel [would be] still free to question [the witness] about the police tactics in procuring his since-disavowed identification." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

Trial counsel's failure to file a motion to suppress and, instead, to cross-examine Wagner to attack his credibility, was unreasonable. It was not a sound alternative strategy and, in fact, trial counsel could have filed the motion to suppress and still focused on these areas during Wagner's cross-examination. The two things are not mutually exclusive, which preempts an argument that trial counsel simply selected one strategy over another. *Id*. *citing Rodriguez v. Young*, 906 F.2d 1153, 1160 (7th Cir. 1990).

## II. **FOWLER ESTABLISHED PREJUDICE UNDER *STRICKLAND* WHERE TRIAL COUNSEL'S FAILURE TO FILE MOTION TO SUPPRESS IDENTIFICATION UNDERMINED RELIABILITY OF THE VERDICT.**

Ultimately, the Pennsylvania Court determined that Fowler could not establish the prejudice prong of the *Strickland* standard. (App. 99-100) The District Court concluded that the Pennsylvania court did not evaluate the prejudice prong of the *Strickland* standard unreasonably. (App. 17-18) This determination was wrong.

### A. **ESTABLISHING PREJUDICE UNDER *STRICKLAND***

Prejudice is established by demonstrating that but for counsel's deficient performance, there is a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 687-688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Rey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368 (1993), *quoting Strickland*, 466 U.S. at 694. "This standard is not a stringent one." *Id.* In assessing prejudice, the reviewing court "must consider the totality of the evidence before the judge or jury." *Id*. at 695.

## B. DEMONSTRATING PREJUDICE FOR FAILING TO FILE A SUPPRESSION MOTION

When prejudice is claimed based upon trial counsel's failure to file a motion to suppress, Fowler must demonstrate that: 1) the motion to suppress would have been granted,  2) leading to a different outcome at trial. *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005) *See Kimmelman v. Morrison,* 477 U.S. 365 (1986)(in allegation of counsel's ineffectiveness for failure to argue Fourth Amendment claim, prejudice is demonstrated by establishing the underlying Fourth Amendment claim has merit, and the outcome of the trial would have been different without the excludable evidence.)

### 1. A MOTION TO SUPPRESS THE IDENTIFICATION WOULD HAVE BEEN GRANTED

If Fowler's trial counsel had filed a motion to suppress in the trial court, then the burden would have been on the Commonwealth to show that the identification wasn't the result of suggestiveness. The Commonwealth has the "initial burden of production, a burden it must satisfy in all cases. *See* Pa.R.Crim.P. 581 cmt. Rule 581(H) clearly states it is the Commonwealth's burden to present evidence that the defendant's constitutional rights were not infringed." *Commonwealth v. Enimpah*, 106 A.3d 695, 701 (Pa. 2014). Since the Commonwealth concedes that Wagner

gave an impermissible suggestive identification, (App. 130), then they could not have met their burden at a suppression hearing.

However, for the identification to be excluded, a reviewing court must consider the 'totality of the circumstances' to assess whether the identification was reliable. Although the Superior Court cited the appropriate factors set-forth in *Carter*, which is consistent with the federal standard of review, the Pennsylvania court did not explicitly state that the identification was unreliable and the motion to suppress would have granted.  (App. 98-99) The District Court's analysis fell just short of making this determination, as well.  Although Fowler argues that there is the implication that the state court found the identification both impermissible and unreliable when reviewing the 'totality of the circumstances,' he recognizes that this Court may conduct *de novo* review.

In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court considered "suggestiveness and misidentification," and outlined a "totality of the circumstances" reliability test to review "the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. at 198. The Court identified five factors for consideration: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness'

prior description of the criminal, (4) the level of certainty demonstrated by

the witness at the confrontation, and (5) the length of time between the crime

and the confrontation." *Id*. at 199.   Since "reliability is the linchpin in

determining the admissibility of identification testimony," *Manson v.*

*Brathwaite*, 432 U.S. 98, 114 (1977), the "totality of the circumstances"

factors announced in *Biggers* must be considered when conducting this

review. *Id*.  at 114.

Once again, Fowler highlights the factors considered by the Superior

Court and the information already contained of record that establishes that

Wagner's identification was not reliable, considering the 'totality of the

circumstances,' as follows:

> The record reflects that Wagner identified Fowler for the first
> time at his preliminary hearing. N.T. 7/14/11, at 78, 80. Between the
> time of the robbery and the initial identification, Wagner watched a
> news program that depicted Fowler, in handcuffs, being arrested for
> the crimes at issue. *Id*. at 79-80. The record further reflects that
> Fowler's preliminary hearing was continued, and on at least one
> occasion, Wagner saw Fowler at the Magistrate's office and knew he
> was one of the individuals charged. *Id.* at 80-81. Thus, as in *Carter,*
> Wagner's subsequent identification of Fowler was an "impermissible
> suggestive identification." *Carter*, 643 A.2d at 71.
>     ….
> Furthermore, Wagner misidentified Fowler's accomplice and
> testified at the preliminary hearing that he was as certain of his
> identification of Fowler as he was of Fowler's accomplice. *Id.* at 83-
> 84.

(App. 98-99)(Superior Court's citations refer to pages in Trial Transcript)

It's important to keep in mind that the case against Fowler's co-defendant was ultimately dismissed during a pre-trial *habeas* hearing because Wagner was unable to identify the co-defendant. At the preliminary hearing before the magistrate, Wagner actually identified someone else in the courtroom --- not the co-defendant – as one of the actors. (App. 216-217)

Wagner stated he was as confident of his ability to ID Fowler as he was of his ability to identify the codefendant, clarifying that all he knew was that the passenger was bigger than the driver. (App. 234-235) Given the 'totality of the circumstances' in this case, Wagner's identification was not independently reliable and a motion to suppress would have been granted.

**2. THERE IS A REASONABLE LIKELIHOOD FOWLER WOULD NOT HAVE BEEN CONVICTED IF THE IDENTIFICATION HAD BEEN SUPPRESSED**

In the absence of Wagner's identification testimony, there is a reasonable likelihood that the outcome of Fowler's trial would have been different. The Pennsylvania Superior Court's conclusion to the contrary was wrong. The District Court's determination that the state court's application of *Strickland's* prejudice prong was not unreasonable was incorrect.

The Pennsylvania Court assessed all remaining evidence of record and noted :

25

Wagner testified to the license plate number, and a description of the vehicle that the perpetrators of the robbery were driving. This was the same vehicle police found when they came to Fowler's home. Fowler admitted that he was the only person in control of that vehicle on the day of the robbery between 9:30 a.m. and the time the police arrived to speak with him.

(App. 99)(citations omitted)

In the District Court, Fowler argued that the remaining evidence cited by the Pennsylvania Court did not establish he was involved in the robbery. Rejecting Fowler's argument, the District Court assessed that the remaining evidence did not merely show that Fowler's car was near the jewelry store, as Fowler suggested. (App. 17) The District Court stated that the remaining evidence showed "that [Fowler] was one of two men that Wagner observed acting suspiciously outside of his home that morning." (App. 17) The District Court opined that since the license number Wagner wrote down belonged to Fowler's car, and Fowler told police that he was the only one using his car that day and he wasn't at home during the robbery, this proved that Fowler was outside Wagner's house acting suspiciously. (App. 17) Also, the District Court noted police officer Velez found a silver certificate "in the vicinity" of where Wagner saw a car parked that morning. (App. 17) In light of all of these random circumstances, the District Court concluded that the Pennsylvania Court had not unreasonably applied the *Strickland* standard, where it was not "so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (App. 18) citing *Harrington* 562 U.S. at 103. The District Court is wrong.

If Wagner's identification had been excluded, there is a reasonable likelihood that Fowler's trial would have had a different outcome. The remaining evidence relied upon by the District Court was entirely provided by Wagner – an unreliable witness. Trial counsel would have attacked Wagner's credibility, much the same way he did during trial, but with the added benefit that Wagner would not have been permitted to identify Fowler as the driver of the car parked on his street on the day of the incident. The jury would have learned that Wagner, who identified the wrong person as Fowler's co-defendant, saw two unidentified African American men parked in a car on his street, which Wagner deemed "suspicious" activity.

### C. THE THIRD CIRCUIT FOUND PREJUDICE IN THE FACTUALLY SIMILAR *THOMAS* CASE

In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit applied the prejudice standard in a factually similar case. That case involved a shooting at a speakeasy resulting in the death of one individual and the wounding of Fuller. *Id*. at 495. The police spoke to two eyewitnesses to the

incident--Young and Fuller. Young, who knew the defendant/Thomas, provided inconsistent statements and initially did not identify the shooter. Ultimately, Young identified Thomas, but testified the police threatened him, and he named Thomas out of fear he would be arrested if he didn't identify Thomas. *Id*.

Fuller described the man who shot him as a black male. He was unable to identify the shooter from 750 photos displayed by the police. Fuller was shown a dozen more photos several weeks later, and still could not identify the shooter. The detective selected two pictures and prompted Fuller to take a "real good" look. Fuller identified Thomas. *Id.* at 495-496.

At the preliminary hearing, Fuller did not identify Thomas. He stated that he previously selected Thomas's photo because the detective selected two pictures from the bunch and indicated they depicted the actors from the incident. *Id*. at 496. Because Fuller did not identify Thomas at the preliminary hearing, Thomas's attorney withdrew the motion to suppress his identification, which at that point was moot. *Id.*

At trial, Young and Fuller provided the only testimony linking Thomas to the shooting. Fuller made an in-court identification of Thomas, to which Thomas's attorney failed to object and failed to move to suppress. *Id.* The jury convicted Thomas and acquitted his co-defendant. *Id.*

28

Given these facts, and assuming Fuller's identification had been suppressed, the Court concluded that there was a reasonable likelihood Thomas' trial would have had a different outcome, noting that "this is not a stringent standard." *Id.* at 504. Without Fuller's identification testimony, the only evidence remaining was the "questionable" testimony of Young, whose testimony the jury rejected by acquitting Fuller's co-defendant. *Id.*

Fowler's situation is similar.  Wagner's testimony was the only evidence linking Fowler to the crime. If the identification had been suppressed, the jury would have been left with Wagner's testimony of two non-descript African American men parked in a car on his street, shaded by Wagner's misidentification of Fowler's co-defendant, which resulted in the dismissal of his charges. There is a reasonable likelihood Fowler would not have been convicted in the absence of Wagner's identification.

### III. IF REVIEW OF TRIAL COUNSEL'S STEWARDSHIP IS NOT POSSIBLE ON UNDEVELOPED STATE COURT RECORD, REMAND FOR AN EVIDENTIARY HEARING IS WARRANTED.

Fowler presents his arguments in support of Issues I and II based upon a review of the trial transcripts and application of relevant case law. Trial counsel's reasoning for failing to file a motion to suppress is not part of the record because the PCRA Court denied Fowler's request to hold an evidentiary hearing. (App. 32-33) Fowler also requested an evidentiary hearing in the District Court. (App. 171) Despite acknowledging that trial counsel's rationale for not filing a motion to suppress was not part of the record, the District Court did not conduct an evidentiary hearing.

Fowler argues that, on the record as it stands, there is no sound legal strategy that could explain why his trial counsel failed to file a motion to suppress. Given the underlying facts, the failure to file a motion to suppress is objectively unreasonable.

However, Fowler acknowledges that in the *Thomas* case, which he relies upon in support of the requested relief, the District Court did conduct an evidentiary hearing because the PCRA Court did not entertain a hearing to inquire into counsel's rationale for failing to object or to move to suppress the identification in that case. The *Thomas* Court explained the necessity of

the decision to conduct a hearing in the District Court, citing *Marshall v*

*Hendricks*, 307 F.3d 36, (3d Cir. 2002), and stating that:

> *Strickland* required an analysis based on a complete record.
> The reviewing court's reasoning under the first prong needs to be
> made with an understanding of counsel's thought process, … so that
> a conclusion whether counsel was ineffective can be made based on
> facts of record, rather than on assumptions. *Id*. at 115.

*Thomas* at 498.

Certainly, this case applies the *Strickland* standard, and trial counsel

has not testified as to his strategy. If this Court determines that an analysis

cannot be achieved on the basis of an incomplete record, then the case

should be remanded for an evidentiary hearing in the District Court. Fowler

was diligent in setting forth his ineffective assistance of counsel claims in

the state PCRA Court, and requested an evidentiary hearing for his trial

counsel to testify. The PCRA Court denied this request. Consequently,

Fowler is not at fault for any perceived failure to develop a factual basis for

his claim in the Pennsylvania Court, and the District Court is not prohibited

from conducting a hearing under 28 U.S.C. §2254(e)(2).

## **CONCLUSION**

In consideration of the prejudicial effect of trial counsel's ineffective assistance in failing to file a motion to suppress the identification testimony, Fowler respectfully requests this Court to vacate the Order of the District Court, grant a writ of habeas corpus, remand the case to the Pennsylvania state court for a New Trial; or, in the alternative, if this Court concludes that the record is incomplete and prevents proper review of the ineffectiveness claim, Fowler requests that the case be remanded to the District Court for an evidentiary hearing.

Respectfully Submitted,


_ s/Diana Lynn Stavroulakis____
Diana Lynn Stavroulakis
Attorney for Appellant
Terrance Fowler

## COMBINED CERTIFICATIONS

### Certificate of Bar Membership

I, Diana Lynn Stavroulakis, certify that I am a member of the Bar of this Court.

s/Diana Lynn Stavroulakis
Diana Lynn Stavroulakis

### Certificate of Compliance

I certify that this brief contains 5,156 words, and 567 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

s/Diana Lynn Stavroulakis
Diana Lynn Stavroulakis

### Certification of Identical Briefs

I certify that the text of the PDF file and hard copies of the brief filed in this appeal are identical.

s/Diana Lynn Stavroulakis
Diana Lynn Stavroulakis

### Certification that Virus Check was Performed

I certify that a virus check was performed on the brief in this matter using Norton Security, Version 22.9.0.71.

s/Diana Lynn Stavroulakis
Diana Lynn Stavroulakis

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

―――――――

### No. 16-1062

―――――――

### TERRANCE FOWLER,
#### Appellant

#### v.

### SUPERINTENDENT SMITHFIELD SCI, ET AL.,
#### Appellee

―――――――――――――――――――――――――――――――

#### Appeal From An Order Entered December 18, 2015,
#### Dismissing Petition For Writ Of Habeas Corpus

―――――――――――――――――――――――――――――――――

### Appendix Volume I, pp. 1-22
### (Volume I of II)

―――――――――――――――――――――――――――――――

**Diana Lynn Stavroulakis, Esq.**
**PA ID# 59255**
**262 Elm Court**
**Pittsburgh, PA 15237**
**(412) 600-8608**
**Diana@Stavroulakislaw.com**

**Attorney for Appellant**
**Terrance Fowler**

## <u>APPENDIX VOLUME I</u>
### Table of Contents

C.A. No. 16-1062

Notice of Appeal…………………………………………………. 1

Certificate of Appealability – October 6, 2016 ………………. 2

Memorandum Order- Senior District JudgeTerrence F. McVerry
        Filed December 18, 2015 ………………………….… 3

Report & Recommendation – Magistrate Susan Paradise Baxter
        Filed November 2, 2015 …………………………………. 4

FILED

JAN - 8 2016

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT

FOR THE <u>WESTERN</u> DISTRICT OF PENNSYLVANIA

TERRANCE FOWLER        ,        :        Docket No. <u>14-151</u>
                Petitioner        :
                                 :
        v.                       :
                                 :
JON FISHER, et al.      ,        :
                Respondent       :


NOTICE OF APPEAL


        Notice is hereby given that <u>Terrance Fowler</u>, Petitioner

in the above named case, hereby appeals to the United States Court of Appeals

for the Third Circuit from the Order denying Petitioner habeas corpus relief,

entered in this action on the <u>18th</u> day of <u>December</u>, 20<u>15</u>.
(Order attached).


                        Respectfully submitted,


                        <u>Terrance Fowler</u>
                                        Petitioner

                        Terrance Fowler

                        Inmate No. <u>KF-4317</u>

                        SCI Smithfield
                        P.O. Box 999, 1120 Pike Street
                        Huntingdon, PA 16652


App. 1

ALD-343                                                                July 14, 2016
**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

C.A. No. **16-1062**

TERRANCE FOWLER, Appellant

    VS.

 SUPERINTENDENT SMITHFIELD SCI, ET AL

    (W.D. Pa. Civ. No. 1-14-cv-00151)

Present: AMBRO, SHWARTZ and NYGAARD, <u>Circuit</u> <u>Judges</u>

          Submitted is Appellant's request for a certificate of appealability under
          28 U.S.C. § 2253(c)(1)

          in the above-captioned case.

                      Respectfully,

                      Clerk

MMW/BPM/dwb
_____ORDER_____
      The appellant's request for a certificate of appealability is granted as to his claim
that he was denied the effective assistance of counsel by his trial counsel's failure to file a
motion to suppress an identification, as he has made "a substantial showing of the denial
of a constitutional right." <u>See</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 502-03 (3d Cir. 2005).
His request is denied as to his other claims because he has not made the requisite showing
as to them.  28 U.S.C. § 2253(c)(2).  Appellant has otherwise not shown that counsel
provided ineffective assistance.  <u>See</u> <u>Branch v. Sweeney</u>, 758 F.3d 226, 233 (3d Cir.
2014); <u>United States v. Bui</u>, 795 F.3d 363, 366-67 (3d Cir. 2015).

                  By the Court,

                  <u>s/ Patty Shwartz</u>
                  Circuit Judge

Dated:  October 6, 2016
JT/cc: Lisa R. Ferrick, Esq.
      Mary L. Friedline, Esq.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE FOWLER, | ) | |
| Petitioner, | ) | Civil Action No. 14-151 Erie |
| v. | ) | |
| JON FISHER, et al., | ) | |
| Respondents. | ) | |

## MEMORANDUM ORDER

This habeas action filed by Terrance Fowler was referred to United States Magistrate Judge Susan Paradise Baxter for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Local Rules for Magistrate Judges. The Magistrate Judge issued a Report and Recommendation ("R&R") [ECF No. 13], in which she recommended that Fowler's petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Fowler filed Objections to the R&R. [ECF No. 17]. Where, as here, Objections have been filed, the Court is required to make a *de novo* determination as to those portions of the R&R to which objections were made. See 28 U.S.C. § 636(b)(1). Accordingly, after a *de novo* review of the petition and documents in this case, together with the R&R and Objections thereto, the following order is entered:

**AND NOW**, this 18th day of **December, 2015**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and a certificate of appealability is **DENIED**. The R&R of Magistrate Judge Baxter [ECF No. 13], is adopted as the opinion of the Court. The Clerk of Court is directed to close this case.

 s/ Terrence F. McVerry
Terrence F. McVerry
Senior United States District Judge

cc:   All parties of record
Susan Paradise Baxter,
U.S. Magistrate Judge

App. 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRANCE FOWLER,               )
       Petitioner,             )     Civil Action No. 14-151 Erie
                       )
       v.             )     Senior District Judge Terrence F. McVerry
                       )     Magistrate Judge Susan Paradise Baxter
JON FISHER, et al.,            )
       Respondents.            )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Terrance Fowler ("Petitioner") pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

## II.   REPORT

### A.   Relevant Background[1]

This case is about the July 7, 2010, robbery of the Aleks Cher Jewelry Store and the shooting of the store's owner, Aleksandr Cheremnykh. Petitioner was charged with crimes related to that robbery and shooting and his two-day trial commenced on July 14, 2011, in the Court of Common Pleas of Erie County. David G. Ridge, Esquire, was Petitioner's trial attorney.

Cheremnykh was the prosecution's first witness. He testified that on July 7, 2010, at around 11:30 a.m., two black males entered his jewelry store, which is located at 4520 Peach Street, Erie,

---

[1] In addition to filing electronically certain relevant state court documents at ECF No. 9, Respondents submitted a hardcopy of the documents that were filed in the Court of Common Pleas of Erie County in Petitioner's underlying criminal case, including the relevant transcripts. The documents filed in the Court of Common Pleas are indexed and numbered 1 through 36. Those documents are cited herein as "CP No. __ ."

1

Pennsylvania. Both males were wearing ski masks, baseball caps, and dark sunglasses. (7/14/11 Trial Tr. at 26-28). Cheremnykh could not see their faces and could not identify either of them. (Id. at 47). He testified that one of the robbers approached him and pointed a gun at him. Cheremnykh recalled that this individual was wearing a "dark blue almost black T Shirt[,]" and a baseball cap that was also a dark color. (Id. at 26-27). Accordingly to Cheremnykh, the second individual was wearing a plain white shirt. (Id. at 29). Cheremnykh testified that the first individual told him to open the safe, and that when Cheremnykh hesitated, that individual shot him in the chest. (Id. at 30-31).

Cheremnykh testified that the two individuals took several silver certificates and keys and then ran out of the store and fled the scene on foot. (Id. at 34-35). Cheremnykh, who did not realize how seriously he was injured, attempted to chase after them before he collapsed. (Id. at 31-32). The police and paramedics soon arrived and he was transported to a hospital in Pittsburgh. He remained in a coma for about seven days. (Id. at 33). At the end of Cheremnykh's direct testimony, the surveillance video that captured what occurred outside of his store was played for the jury. (Id. at 36. See also 7/15/11 Trial Tr. at 87).

The prosecution's next witness was Bruce Wagner. He lived less than a quarter of a mile from the jewelry store. (Id. at 52). Wagner testified that at approximately 10:50 a.m. on July 7, 2010, he was in his living room when he observed from the window a "small green four-door" car being parked on the street outside his home. (Id. at 54). He saw the two occupants of the car get out and walk south out of his sight. (Id.) Wagner stated that the driver of the car was dressed in dark colored clothing, and the passenger had on a white shirt. (Id. at 54-55). About ten minutes later, the two individuals came back to the car and drove away. (Id. at 55). Wagner testified that, at that point, the behavior of the individuals he observed did not concern him. (Id.)

App. 5

Wagner next testified that no more than five minutes later, the same two individuals drove up again and parked outside his home in the same spot that they had parked previously. (Id.) This time, Wagner was in his kitchen and he was about 50 feet from the individuals he was observing. (Id.) Wagner became suspicious, and when the two individuals exited their car and left the area again on foot, he went outside and wrote down the license plate number of their car. (Id. at 59-61). Wagner testified that after about ten to fifteen minutes, the two individuals came running back to the car. (Id. at 58). Wagner turned on his police scanner and heard that the jewelry store located around the corner from his house had been robbed. (Id.) Wagner ran outside and flagged down Officer Salvador Velez, who was driving by his house at the time. He gave the officer the license plate number of the green car that had been parked outside his house and a description of the individuals he saw. (Id. at 59-61).

Officer Velez later testified that after he spoke with Wagner, he went to the area where Wagner told him the green car had been parked. In that location, Officer Velez found a silver certificate. (Id. at 96).

Wagner testified that Petitioner was the man he saw driving the green car that had twice parked outside his house the morning of July 7, 2010. (Id. at 58-59). When the prosecutor asked him how he was able to identify Petitioner, Wagner responded: "[b]ecause he looked right at me before he got out of the car the second time." (Id. at 59). Wagner also testified that he had never seen Petitioner before the incident in question and that he did not get a clear view of the face of the individual who was with Petitioner that morning. (Id.) He also explained that the first time he identified Petitioner was at the preliminary hearing. (Id. at 61-62).

On cross-examination, Wagner admitted that before he identified Petitioner at the preliminary hearing, he had seen reporting on the local news that Petitioner was one of the individuals arrested for the robbery. (Id. at 78-80). That reporting contained video of Petitioner in handcuffs. (Id. at 80-81).

Wagner also admitted that when he was asked at the preliminary hearing to identify the other individual

he saw with Petitioner the day of the robbery, he failed to identify Damon Dixon, who was Petitioner's

co-defendant.[2] (Id. at 84). On redirect examination, Wagner stated that he was "[a]bsolutely positive"

that Petitioner was the individual he observed during the incident in question. (Id. at 86).

The police traced the license plate information Wagner had given to Officer Velez to Petitioner's

residence and the police arrived there shortly before 1:00 p.m. on July 7, 2010.[3] (7/14/11 Trial Tr. at

103-04, 107-08). Officer Don Sornberger testified that a green car with a Pennsylvania license plate

matching the number that Wagner had recorded was parked in the driveway of Petitioner's residence.

(Id. at 104, 110-12). He took Petitioner and his father, James Fowler, into custody. (Id. at 106. See also

id. at 115-16, 120-21).

After the police detained Petitioner, Detective Jim Spagel read him his Miranda rights and

interviewed him. Petitioner told Detective Spagel that at around 9:30 a.m. that day, he drove his

girlfriend to work and dropped his daughter offer at daycare. (Id. at 118). He also told Detective Spagel

that he was the only person in control of the car from between 9:30 a.m. and the time the police arrived

at his home that afternoon. (Id. at 119). Detective Spagel's interview with Petitioner was recorded and it

was played for the jury.

The police searched Petitioner's home. Detective Adam DiGilarmo testified that during the

search the police recovered, among other things, a Mossberg shotgun, which he found positioned

between the mattress and box spring of a bed located in an upstairs bedroom. (7/15/11 Trial Tr. at 16).

The gun had two live shells in it. (Id.) When the prosecution moved to have the gun admitted, defense

---

[2]    After the defense closed its case, the trial court informed the jurors that Dixon's case was dismissed for lack of
evidence and that fact was part of the evidence for it to consider. (7/15/11 Trial Tr. at 68).

[3]    Officer Sornberger testified that he arrived at the Aleks Cher Jewelry Store at 12:23 p.m., and that he went to
Petitioner's home approximately 20 to 30 minutes later. (7/14/11 Trial Tr. at 103-04, 107-08).

4

App. 7

counsel objected on the basis that there had been no allegation that the gun was used by anybody. (Id. at 17). In response, the prosecutor stated that during Petitioner's interview with Detective Spagel, Petitioner stated that there were no firearms in the house. Therefore, the prosecutor stated, the fact that a gun was found in the home showed that he lied to the police. (Id.) The court sustained the defense's objection on the basis that the gun's admission would be more prejudicial than probative. (Id. at 31).

Detective DiGilarmo also participated in the search of Petitioner's car. Inside it he found, among other things, a black baseball cap and a white T-shirt. (Id. at 21-22).

James Fowler, Petitioner's father, testified for the defense. He lived with Petitioner and testified that the morning of July 7, 2010, Petitioner told him that that day he was going to be working on his car, which needed new brakes. (Id. at 37). James Fowler also stated that Petitioner left the home sometime before 9:00 a.m. to drive his girlfriend to work and his daughter to daycare. (Id. at 38-39). James Fowler testified that Petitioner "wasn't gone too long" and that he came home after "not quite an hour." (Id. at 40). After that, they began to work with the brakes on Petitioner's car. (Id. at 41). James Fowler also said that Petitioner did not leave the house again that day until the police came to the home that afternoon. (Id. at 42). Defense counsel asked James Fowler: "To the best of your recollection, then, how long had [Petitioner] been home before the police got there?" (Id.) James Fowler answered: "It wasn't quite an hour, maybe 45, 50 minutes. About – almost an hour." (Id.)

On cross-examination, James Fowler testified that he thought that Petitioner returned home the morning of July 7, 2010, "before 9:30[.]" (Id. at 49). He qualified his answer, however, by noting "[l]ike I say, who looks at the clock." (Id. at 50). The following exchange then occurred:

> Q.    Well, I just want to ask, because we played [Petitioner's statement to Detective Spagel] in court yesterday and he told the police he was at the YMCA at 9:45, 10ish to drop his child off for day-care, so obviously, his time to the police and the time you're telling us aren't matching up, so are you sure?

A.      I'm not – I told you last time I wasn't sure. I wasn't sure. I didn't look at the clock or anything.

(Id.)

The defense next called Katie Peterson, and employee at the Glenwood Park YMCA. She testified that she was working on July 7, 2010, and that Petitioner dropped his daughter off at their daycare between 9:30 to 9:45 a.m. (Id. at 58). On cross-examination, Peterson stated that Petitioner was driving a green car that day. (Id. at 61).

At the conclusion of Petitioner's trial, the jury found him guilty of attempted homicide, aggravated assault, conspiracy to commit robbery, and possessing instruments of crime. On September 20, 2011, the court sentenced him to an aggregate term of 27 ½ to 55 years of imprisonment. The Superior Court of Pennsylvania affirmed his judgment of sentence on June 1, 2012. (ECF No. 9-3, Commonwealth v. Fowler, No. 1787 WDA 2011, slip op. at 8-11 (Pa.Super.Ct. June 1, 2012) ("Fowler I")).

In June 2013, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. (CP No. 24). The PCRA court appointed him counsel, who filed a supplemental PCRA motion. (CP No. 26). On July 17, 2013, the court issued a final order in which it held that no hearing was required and that Petitioner was not entitled to PCRA relief. (CP Nos. 29, 31).

Petitioner filed an appeal with the Superior Court and chose to proceed *pro se*. He raised four claims that his trial counsel provided him with ineffective assistance in violation of his rights under the Sixth Amendment. Petitioner is raising those same four claims in this case.

On March 3, 2014, the Superior Court issued an opinion in which it affirmed the PCRA court's decision to deny Petitioner relief. (Commonwealth v. Fowler, No. 1330 WDA 2013, slip op.

6

App. 9

(Pa.Super.Ct. Mar. 3, 2014) ("<u>Fowler II</u>")).[4] The Superior Court denied on the merits the four claims at issue in this habeas case.

Before this Court is Petitioner's *pro se* petition for a writ of habeas corpus. [ECF No. 1]. He claims that his trial counsel provided him with ineffective assistance when he:

– failed to request an alibi instruction after "James Fowler testified that Petitioner was home when the crime occurred." [ECF No. 1 at 5] (Claim One).

– failed to file a motion to suppress Bruce Wagner's in-court identification, which was tainted by impermissibly suggestive procedures. [ECF No. 1 at 7] (Claim Two).

– failed to request a curative instruction after Detective DiGilarmo testified about recovering the Mossberg shotgun from Petitioner's home but the trial court sustained the defense's objection to the admission of the weapon. [ECF No. 1 at 8] (Claim Three).

– failed to request a "<u>Kloiber</u> instruction where the evidence supported an instruction." [ECF No. 1 at 10] (Claim Four).

Respondents filed an answer [ECF No. 9], to which Petitioner filed a reply [ECF No. 12].

### B.    Discussion

#### 1.    Standard of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254. Under this statute, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Importantly, errors of state law are not cognizable. <u>Id</u>. <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Petitioner carries the burden of

---

[4]       The copy of <u>Fowler II</u> that Respondents filed with this Court is missing pages. A complete copy of it was obtained from the Superior Court's website at <http://www.pacourts.us/courts/superior-court/court-opinions/> and is attached to this report and recommendation. Respondents are reminded that "[c]are should be taken so that all items [contained in the state court record] are photocopied accurately, legibly, and in full." LCvR 2254.E.1.c.

proving he is entitled to the writ. <u>See, e.g.</u>, <u>Cullen v. Pinholster</u>, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011).

> In describing the role of federal habeas proceedings, the Supreme Court observed:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

<u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

<u>Harrington v. Richter</u>, 562 U.S. 86, 102-03 (2011) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which, among other things, amended 28 U.S.C. § 2254. AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Pinholster</u>, 131 S.Ct. at 1398 (internal quotation marks and citations omitted).

Because the Superior Court denied on the merits the four claims at issue in this case, this Court's review of those claims is very limited. It is not for this Court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, which is codified at § 2254(d), it is Petitioner's burden to show that the Superior Court's adjudication "resulted in a decision that was **contrary to, or involved an unreasonable application of**, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. §2254(d)(1) (emphasis added).[5]

---

[5]   Section 2254(d)(2) provides the standard of review for issues of fact, and it permits habeas relief only if the petitioner demonstrated that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). BRIAN R. MEANS, FEDERAL HABEAS MANUAL §§ 3:73-74, § 3:79, WestlawNext (database updated June 2015). None of the claims before this Court involve solely an issue of fact. Therefore, § 2254(d)(2)'s standard of review does not apply to this case. If *Continued on next page…*

8

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze each of Petitioner's claims is governed by Strickland v. Washington, 466 U.S. 668 (1984). Strickland recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690, 687).

To prevail on a claim of ineffective assistance under Strickland, Petitioner has the burden of establishing that his trial counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Importantly, the Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Titlow, 134 S.Ct. at 17 (quoting Strickland, 466 U.S. at 690); Harrington, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689).

The Supreme Court also instructed:

> "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, —, 130 S. Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with

§ 2254(d)(2) did apply, Petitioner could not overcome it. The Superior Court's adjudication of each of his claims did not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. <u>Strickland</u>, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

<u>Harrington</u>, 562 U.S. at 105.

<u>Strickland</u> also requires that Petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance.[6] This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." <u>Strickland</u>, 466 U.S. at 694. As the United States Court of Appeals for the Third Circuit explained:

> [The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" <u>Jacobs v. Horn</u>, 395 F.3d 92, 105 (3d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Harrington</u>, 131 S.Ct. at 787 (citing <u>Strickland</u>, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." <u>Id.</u> at 787-88 (citing <u>Strickland</u>, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. <u>Id.</u>

<u>Brown v. Wenerowicz</u>, 663 F.3d 619, 630 (3d Cir. 2011).

For the reasons set forth below, Petitioner has not met his burden of demonstrating that the Superior Court's adjudication of any of his claims "resulted in a decision that was **contrary to, or involved an unreasonable application of**" <u>Strickland</u>. Therefore, each claim must be denied.

---

[6]     The Supreme Court in <u>Strickland</u> noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground of that the petitioner failed to meet his burden of showing prejudice, this course should be followed. <u>Id.</u>

### 2. The Superior Court's Adjudication Was Not "Contrary To" Strickland

"The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). The Superior Court applied the Strickland standard when it evaluated Petitioner's claims. (Fowler II, No. 1330 WDA 2013, slip op. at 6).[7] Accordingly, its adjudication of each of Petitioner's claims withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

### 3. The Superior Court's Adjudication Was Not "An Unreasonable Application of" Strickland

The only remaining inquiry for this Court is whether Petitioner has established that the Superior Court's adjudication of any of his claims was an "unreasonable application of" Strickland. The Supreme Court explained that this burden is very difficult to meet, noting that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102.

---

[7] Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

Importantly, the Supreme Court instructed that § 2254(d)(1)'s "unreasonable application" clause:

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Id. at 102-03 (emphasis added). The Supreme Court also instructed:

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," [<u>Strickland</u>, 466 U.S.] at 689; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009)]. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. [<u>Id.</u>] Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.**

Id. at 105 (parallel citations omitted) (emphasis added).

### a.      Claim One

In his first claim, Petitioner contends that his trial counsel was ineffective for failing to request

an alibi instruction after "James Fowler testified that Petitioner was home when the crime[s] occurred.

[ECF No. 1 at 5]. In denying this claim, the Superior Court first explained:

> "An alibi is a defense that places a defendant at the relevant time at a different place than the crime scene and sufficiently removed from that location such that it was **impossible** for him to be the perpetrator." <u>Commonwealth v. Sileo</u>, 32 A.3d 753, 767 (Pa.Super. 2011) (<i>en banc</i>) (citing <u>Commonwealth v. Collins</u>, 549 Pa. 593, 702 A.2d 540 (1997)) (emphasis added). "Where such evidence has been introduced, a defendant is entitled to an alibi instruction to alleviate the danger that the jurors might impermissibly view a failure to prove the defense as a sign of the defendant's guilt." <u>Commonwealth v. Mikell</u>, 556 Pa. 509, 517, 729 A.2d 566, 570 (1999).

12

(Fowler II, No. 1330 WDA 2013, slip op. at 7-8). The Superior Court next summarized James Fowler's testimony, in which he acknowledged that he was not sure what time Petitioner came home the morning of July 7, 2010, but that he thought that by the time the police arrived at their home, Petitioner had been there for about 45 to 50 minutes. (Id. at 8). The Superior Court concluded that since the police arrived around 1:00 p.m., the robbery at the jewelry store occurred at approximately 11:20 a.m., and Petitioner's home was "roughly 10 minutes from the jewelry store[,]" "James Fowler's testimony did not make it impossible for [Petitioner] to have been the perpetrator of the robbery." (Id. at 9). "Indeed," the Superior Court held, "his testimony regarding how long Fowler had been home prior to the arrival of the police placed [Petitioner] **out of the home** at the time of the robbery." (Id. at 10) (emphasis added).

Petitioner is not entitled to relief on this claim. As the Superior Court explained, James Fowler could not recall what time Petitioner arrived back home the morning of the July 7, 2010, and the time estimations that he did give did not make it impossible for Petitioner to have committed the robbery. Therefore, Petitioner has not established either of the required elements under Strickland, let alone that the Superior Court's adjudication of Claim One "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, Petitioner has failed to demonstrate that the Superior Court's adjudication of Claim One was an "unreasonable application of" Strickland.

### b.    Claim Two

In Claim Two, Petitioner contends that his trial counsel was ineffective for failing to file a motion to suppress Wagner's in-court identification of him on the grounds that it was the result of impermissibly suggestive procedures. Because no evidentiary hearing was held on Petitioner's PCRA claims, Petitioner's trial attorney never testified in order to explain why he did not move to suppress

13

App. 16

Wagner's identification, which Wagner admittedly gave after he saw Petitioner on the television news in handcuffs.

In resolving this claim, the Superior Court concluded that Petitioner failed to establish that he was prejudiced by his counsel's failure to file a motion to suppress Wagner's identification. (Fowler II, No. 1330 WDA 2013, slip op. at 12-13). The court explained:

> [E]ven assuming that Wagner did not have an independent basis for his identification of [Petitioner], we cannot conclude that [Petitioner] was prejudiced by his counsel's failure to file a motion to suppress the identification. In addition to Wagner's identification of [Petitioner] at the preliminary hearing and at trial, Wagner also testified to the license plate number and a description of the vehicle that the perpetrators of the robbery were driving. [7/14/11 Trial Tr. at] 54, 61. This was the same vehicle police found when they came to [Petitioner's] home. Id. at 112. [Petitioner] admitted to police that he was the only person in control of that vehicle on the day of the robbery between 9:30 a.m. and the time the police arrived to speak with him. Id. at 119.

> As there was evidence independent of Wagner's identification of [Petitioner] implicating [Petitioner] as the perpetrator of the robbery, there is no basis for concluding that there is a reasonable probability that the outcome would have been different if counsel had filed a motion to suppress the identification.

(Id. at 12).

Petitioner argues that the Superior Court's decision was an "unreasonable application of" Strickland because the mere fact that his car was near the scene of the crime was insufficient to establish his guilt. But, as the Superior Court explained, other evidence independent of Wagner's identification established more than just that Petitioner's car was parked near the scene of the crime. It establish that Petitioner was one of the two men that Wagner observed acting suspiciously outside of his home that morning. Specifically, the license plate information that Wagner recorded proved that the car Petitioner was using that morning was the car used by the two men he observed; Petitioner admitted to the police that he was the only one in control of that car during the time period in question; and, Petitioner was not at his own home during the time period in which the robbery occurred. Further, after Wagner flagged

14

down Officer Velez to report what he saw, Officer Velez found a silver certificate in the vicinity where Petitioner's car had been parked. Considering all of this evidence, the Court cannot say that the Superior Court's adjudication of Claim Two "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, Petitioner has failed to demonstrate that the Superior Court's adjudication of Claim Two was an "unreasonable application of" Strickland.

### c.     Claim Three

In his next claim, Petitioner contends that his trial counsel was ineffective for failing to request a curative instruction after the prosecution presented evidence that the police found the Mossberg shotgun in an upstairs bedroom of his house. In denying this claim, the Superior Court held:

> [Petitioner] argues that because the trial court excluded the shotgun from evidence based upon its conclusion that the evidence was more prejudicial than probative, trial counsel should have requested a curative instruction regarding the officer's testimony about locating the shotgun in [Petitioner's] bedroom….
>
> Once again, … the record does not support a finding that [Petitioner] was prejudiced by the presentation of testimony regarding the shotgun. As discussed supra, the evidence at trial included testimony that [Petitioner] was in the vicinity of the scene of the crime at the time the crime occurred and that proceeds of the robbery were discovered where is had car been parked. See supra, pp. 8-9.
>
> Furthermore, the record reflects that the testimony concerning the shotgun was brief:
>
> A. We searched the entire bedroom. I found a Mossberg shotgun in between the mattress and box spring of the bed. I found empty a[] pancake holster underneath the bed along with a silver magazine underneath.
>
> Q. Showing you what's marked as Commonwealth Exhibit Number 13. Can you look at that and tell me if you recognize what's in this big box?
>
> A. Yeah, the Mossberg 12 shotgun.
>
> Q. What did you do with this gun after you recovered it?

A.  Unloaded it. There was [sic] two live shells in it, and then packaged them up.

N.T., 7/15/11, at 16.

Pursuant to our scope and standard of review, we cannot conclude, based on the evidence presented connecting [Petitioner] to the robbery, that the fleeting reference to the shotgun results in a reasonable probability that the outcome of the trial would have been different if counsel had requested a curative instruction regarding the above testimony.

(Fowler II, No. 1330 WDA 2013, slip op. at 14-15 (bracketed text in original)).

Petitioner contends that the Superior Court's conclusion was wrong and argues that the testimony regarding the shotgun was so incendiary that there is a reasonable probability that it affected the outcome of his trial. As explained above, it is not for this Court to decide whether the Superior Court's decision was right or wrong. See, e.g., White v. Woodall, 134 S.Ct. 1697, 1702 (2014) ("even 'clear error' will not suffice.") (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The only question for this Court is whether the Superior Court's determination that Petitioner failed to demonstrate that he was prejudiced by the absence of a curative instruction was an "unreasonable" application of Strickland. Because it cannot be said that that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" Harrington, 562 U.S. at 103, this Court must answer that question in the negative and conclude that Petitioner has failed to establish that the Superior Court's adjudication of Claim Three was an "unreasonable application of" Strickland.

### d.    Claim Four

In his final claim, Petitioner contends that he received ineffective assistance because his counsel failed to request that the trial court give a cautionary jury instruction regarding Warner's identification of

16

him pursuant to <u>Commonwealth v. Kloiber</u>, 106 A.2d 820 (Pa. 1954). In <u>Kloiber</u>, the Supreme Court of

Pennsylvania held:

> where the witness is not in a position to clearly observe the assailant, or he is not positive
> as to identity, or his positive statements as to identity are weakened by qualification or by
> failure to identify defendant on one or more prior occasions . . . the court should warn the
> jury that the testimony as to identity must be received with caution.

106 A.2d at 826-27 (citations omitted).

> In denying this claim, the Superior Court held:

> [Petitioner] states that trial counsel was ineffective for failing to request a <u>Kloiber</u>
> instruction…. [Petitioner] bases his argument on the combination of Wagner's
> qualification, before misidentifying [Petitioner's] accomplice, that it had been three
> months since he observed the accomplice and Wagner's testimony that he was as certain
> of his identification of [Petitioner] as he was of [Petitioner's] accomplice. [Petitioner's]
> Brief at 27-29. According to [Petitioner], Wagner therefore equivocated on the
> identification of [Petitioner], and counsel thus should have requested a <u>Kloiber</u>
> instruction. [Petitioner's] Brief at 29-30.

> The PCRA court found this issue to be devoid of merit. It found that "the witness
> had a clear, unobstructed view of [Petitioner], observed [Petitioner] on more than one
> occasion, was sure [Petitioner] was the person he saw, and accurately identified
> [Petitioner] in the past." PCRA Court Opinion, 6/21/13, at 2.

> Our review of the record comports with that of the [PCRA] court. We find no
> support in the record for [Petitioner's] claim that Wagner ever equivocated regarding his
> identification of [Petitioner]. To the contrary, it is uncontested that Wagner identified
> [Petitioner] at the preliminary hearing (N.T., 7/14/11, at 83); testified at trial that
> [Petitioner] "looked right at [Wagner] before he got out of the car the second time" (<u>id.</u> at
> 59); and that he was "[a]bsolutely positive" that [Petitioner] was the person he saw
> driving the car on the day in question (<u>id.</u> at 86).

(<u>Fowler II</u>, No. 1330 WDA 2013, slip op. 16-17 (footnote omitted)).

The Superior Court's decision that Petitioner was not entitled to a <u>Kloiber</u> instruction is a state

law determination that is not subject to review by this Court. <u>See</u>, <u>e.g.</u>, <u>Priester v. Vaughn</u>, 382 F.3d 394,

401 (3d Cir. 2004) (federal habeas court cannot "reexamine state court determinations on state-law

questions."). For that reason alone, Claim Four must be denied. It also must be denied because Petitioner

has not established that the Superior Court's adjudication of Claim Four "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, this Court cannot conclude that the Superior Court's decision to deny Claim Four was an "unreasonable application of" Strickland.

### C.     Certificate of Appealability

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition and it provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  November 2, 2015              /s/ Susan Paradise Baxter
                                      SUSAN PARADISE BAXTER
                                      United States Magistrate Judge

18

App. 21

cc:    The Honorable Terrence F. McVerry
        Senior United States District Judge

        Notice to counsel of record by ECF and by U.S. Mail to Petitioner at his address of record

App. 22

## **CERTIFICATE OF SERVICE**

I hereby certify that the following individual is a filing user and will be served electronically by the Notice of Docketing Activity:

Lisa R. Ferrick, Esq.
District Attorney's Office
Erie County Courthouse
140 West Sixth Street
Erie, PA 16501
lferrick@eriecountygov.org

Dated: __April 3, 2017_____          Respectfully Submitted:

__s/Diana Lynn Stavroulakis__
Diana Lynn Stavroulakis
Attorney for Appellant
Terrance Fowler