# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

No. 16-1062
_____

TERRANCE FOWLER,
Appellant

v.

SUPERINTENDENT SMITHFIELD SCI, ET AL.,
Appellee

_____

Appeal from the Order dated December 18, 2015 dismissing the Petition for Writ
of Habeas Corpus at Civil Action No. 14-151 Erie in the United States District
Court for the Western District of Pennsylvania, the Hon. Terrence F. McVerry,
Senior United States District Judge.

_____

Michael E. Burns, Esq.
Assistant District Attorney
District Attorney's Office
Erie County Courthouse
140 West Sixth Street
Erie, Pennsylvania  16501
(814) 451-6349
PA ID #57038
Counsel for Appellee

Date:  June 5, 2017

# **TABLE OF CONTENTS**

Page

Table of Authorities ………………………………………………….    ii

Statement of the Case ………………………………………………..    1

Summary of the Argument …………………………………………..    4

Argument …………………………………………………………….    5

Conclusion …………………………………………………………    11

# TABLE OF AUTHORITIES

Federal Decisions:                                                                                     Page

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) ……………………………………   5

*Cullen v. Pinholster*, 563 U.S. 170 (2011) …………………………………..   5,9

*Gerbier v.Holmes*, 280 F.3d 297 (3d Cir. 2002) …………………………..   5

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770 (2011) …………………. 7,9,10

*Lambert v.Blackwell*, 387 F.3d 210 (3d Cir. 2004) ………………………….   6

*Robinson v. Beard*, 762 F.3d 316 (3d Cir. 2014) ……………………………   9

*Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011) ……………………………   7

*Strickland v.Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) …………. 6,7,9,10

*Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824 (1965) ………………………   5

*Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005) ……………………………   10

*Williams v. Taylor*, 529 U.S. 362 (2000) ……………………………………   6,9

Statutes:

28 U.S.C. §2254(a) …………………………………………………………..   5

28 U.S.C.  §2254(d)(1) ………………………………………………………..   9

29 U.S.C. §2254(e)(1) …………………………………………………………   6

## <u>STATEMENT OF THE CASE</u>

### A.  Relevant Facts

On July 7, 2010 at approximately 11:30 am, two black males entered the
Aleks Cher Jewelry Store in Erie, PA.  Both males were wearing ski masks,
baseball caps and dark sunglasses.  (App. 290-292)  One of the males, who was
wearing a dark blue T-shirt, approached the owner,  Aleksandr Cheremnykh, and
pointed a gun at him.  The second male wore a plain white shirt.  (Id. at 293)
The individual wearing the blue shirt shot the owner in the chest.  (Id. at 294-295)
The two males took several silver certificates, ran out of the store, and fled on
foot.  (Id. at 298-299)

Witness Bruce Wagner, who lived less than a quarter of a mile from the
jewelry store, testified at trial that at approximately 10:50 am on July 7, he saw a
small green four-door vehicle parked on the street outside of his home.  (Id. at 316-
318)  The vehicle's driver was dressed in dark clothing and the passenger wore a
white shirt.  (Id at 318-319)  Approximately ten minutes later, the two males
returned to the car and drove away.  Less than five minutes later, the same two
males again drove up and parked outside Wagner's home in the same spot in
which they had parked previously.  The distance from where Wagner was standing
when he saw the two males to the location of the parked vehicle was
approximately 50 feet.  The driver looked directly into Wagner's house.  (Id. at

1

319-321)   Wagner wrote down the vehicle's license plate number.   After ten to fifteen minutes, the two males ran back to the car.  (Id. at 322-323)

Wagner identified Appellant Terrance Fowler as the man he had seen driving the green car that had twice parked outside his home on July 7.  When asked how he was able to identify Fowler, Wagner testified that Fowler "looked right at me before he got out of the car the second time."  (Id.)  Wagner admitted on cross-examination that before he identified Fowler at the preliminary hearing, he had seen a local television news report stating that Fowler was one of the individuals arrested for the robbery.  That report included video of Fowler in handcuffs.  (Id. at 342-345)  Wagner testified that he was "absolutely positive" that Fowler was the person he had seen driving the car during the incident in question and that his identification was based not on "something you would have viewed afterward" but, rather, on what he had actually seen on the day in question. (Id. at 350)

A green vehicle with a license plate number matching the number given by Wagner was parked in Fowler's driveway at approximately 1:00 pm on July 7, 2010.  (Id. at 368, 374-376)  Fowler told Detective Spagel that he was the only person in control of the car from 9:30 am until the time the police arrived at his home that afternoon.  (App. 383)   A search of Fowler's car yielded a black baseball cap and a white T-shirt.  (Id. at 285-286)  Fowler's father testified that

2

Fowler had left home sometime before 9:00 am and that he thought Fowler had

returned home before 9:30, but then admitted that he wasn't sure about the time

because "I didn't look at the clock."  (Id. at 446-447)

# SUMMARY OF ARGUMENT

Fowler has failed to meet his burden of proof that the Superior Court's adjudication of his claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law." He has not established that counsel's performance was deficient or that the alleged deficient performance actually prejudiced the defense. Fowler has not shown that there is a "reasonable probability" that, but for counsel's alleged errors, the result of the proceeding (trial) would have been different.

There was ample evidence independent of the eyewitness' identification of Fowler implicating Fowler as the perpetrator of the robbery. There is therefore no basis for concluding that there is a "reasonable probability" that the outcome would have been different if counsel had filed a motion to suppress the identification. Fowler has not met his burden of establishing that he was prejudiced by counsel's failure to file a motion to suppress Wagner's in-court identification.

# **ARGUMENT**

I.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS THE IDENTIFICATION OF APPELLANT; APPELLANT WAS NOT PREJUDICED THEREBY.

This Court exercises de novo review over the District Court's denial of habeas corpus relief and its interpretation of the applicable statutes. *Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002). This Court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §2254(a).  The burden of proof in a habeas proceeding is on the petitioner, who must establish by a preponderance of the evidence the facts that support his claim for relief. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824 (1965).   Direct appeal is the primary avenue for review of a conviction.  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes "a difficult to meet and highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011).   State court findings must be treated as correct unless clear and convincing evidence is offered to establish that

5

those findings have been erroneous.  29 U.S.C. §2254(e)(1); *Lambert v. Blackwell*, 387 F.3d 210 (3d Cir. 2004).   Habeas corpus relief shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must prove, first, that counsel's performance was deficient and, second, that the deficient performance actually prejudiced the defense.  This requires a showing that counsel's errors were so serious that (s)he was not functioning as "counsel" as guaranteed by the Sixth Amendment.  To establish prejudice, a petitioner must show that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceedings.  *Williams v. Taylor*, 529 U.S. 362 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  *Strickland* requires that this Court presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2052.

Habeas corpus is a guard against extreme malfunctions in the state criminal

6

justice systems, not a substitute for ordinary error correction through appeal.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms."  *Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011), citing *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770 (2011)(quoting *Strickland*, 466 U.S. at 690).  It is not enough to show that the error "had some conceivable effect on the outcome of the proceeding." *Harrington*, 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 693).  Counsel's errors must be "so serious as to deprive the defendant of a fair trial."  Id. at 787-788 (citing *Strickland*, 466 U.S. at 687).

Fowler has not met his burden of establishing that he was prejudiced by counsel's failure to file a motion to suppress Wagner's in-court identification. The Pennsylvania Superior Court and United States District Court both held that Fowler failed to meet this burden, stating as follows:

> (E)ven assuming that Wagner did not have an independent basis for his identification of Fowler, we cannot conclude that Fowler was prejudiced by his counsel's failure to file a motion to suppress the identification .  In addition to Wagner's identification of Fowler at The preliminary hearing and trial, Wagner also testified to the license plate number and a description of the vehicle that the perpetrators of the robbery were driving.  This was the same vehicle police found when they came to Fowler's home.  Fowler admitted to police that he was the only person in control of that vehicle on the day of the robbery between 9:30 am and the time the police arrived to speak with him.

> As there was evidence independent of Wagner's identification of Fowler implicating Fowler as the perpetrator of the robbery, there is no basis for concluding that there is a reasonable probability that the outcome would have been different if counsel had filed a motion to suppress the identification.

App. 17, 19, 99.   Further, Wagner testified that he was "absolutely positive" that Fowler was the person he had seen driving the car during the incident in question and that his identification was based not on "something you would have viewed afterward" but, rather, on what he had actually seen on the day in question. (App. 350)

Fowler argues simply that the failure to file a suppression motion "could never been (sic) considered part of sound legal strategy" and that counsel "could not have had any reasonable trial strategy…that could support a failure to file a motion to suppress the identification testimony."  Appellant's Brief at 15, 19. As stated by the District Court, Fowler must show that the Superior Court's determination of his claims "resulted in a decision that was contrary to, or involved an unreasonable application" of *Strickland*.  A decision that is "contrary to" established Federal law "applies a rule that contradicts the governing law set for in (the Supreme Court's) cases, or…confronts a set of facts that is materially indistinguishable from a decision of (the Supreme Court's) cases, or…confronts a set of facts that is materially indistinguishable from a decision of (the Supreme) Court but reaches a different result."   "If the state court decision identifies the

correct governing legal principle in existence at the time, a federal court must

assess whether the decision unreasonably applies that principle to the facts of

the prisoner's case." *Robinson v. Beard*, 762 F.3d 316 (3d Cir. 2014), citing

*Cullen v. Pinholster*, 563 U.S. 170 (2011) and *Williams v. Taylor*, 529 U.S.

362 (2000).  Since the Superior Court applied the *Strickland* standard when it

evaluated Fowler's claims, its adjudication of each claim survives review under

the "contrary to" clause of §2254(d)(1); *Williams*, 529 U.S. at 406; App. 14.

Further, the burden of establishing that the Superior Court's adjudication

was an "unreasonable application of " *Strickland* is very difficult to meet.

> A state prisoner must show that the state court's ruling on the claim
> being presented in federal court was so lacking in justification that
> there was an error well understood and comprehended in existing law
> beyond any possibility for fairminded disagreement….When §2254(d)
> applies…The question is whether there is any reasonable argument
> that counsel satisfied Strickland's deferential standard.

App. 15; *Harrington*, 562 U.S. at 102-105.  As the District Court and Superior

Court stated,

> (O)ther evidence independent of Wagner's identification established
> more than just that (Fowler)'s car was parked near the scene of the
> crime.  It established that (Fowler) was one of the two men that
> Wagner observed acting suspiciously outside of his home that
> morning… (T)he license plate information that Wagner recorded
> proved that the car (Fowler) was using that morning was the car used
> by the two men he observed; (Fowler) admitted to the police that he
> was the only one in control of that car during the time period in
> question; and, (he) was not at his own home during the time period
> in which the robbery occurred….(A)fter Wagner flagged down

9

> Officer Velez to report what he saw,…Velez found a silver
> certificate in the vicinity where (Fowler)'s car had been parked.
> Considering all of this evidence, the Court cannot say that the
> Superior Court's adjudication of (his claim of counsel's
> ineffectiveness for failing to file a motion to suppress) 'was so
> lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement." *Harrington*, 562 U.S. at 103.

App. 17, 18.  Therefore, Fowler has failed to demonstrate that the Superior Court's

adjudication of his claim was either "contrary to" or involved an "unreasonable

application of" *Strickland*.  *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), cited

by Fowler, is factually distinguishable from the case at bar.   One of the

eyewitnesses in *Thomas* was allegedly threatened by police before making his

identification and testified that he identified the defendant out of fear he would be

arrested if he didn't do so.  The other eyewitness identified the defendant after

being shown two photos by a detective and being told to take a "real good" look.

No such facts or circumstances are present in the instant case.  Further, in the

instant case, as cited above, additional evidence was presented at trial that linked

Fowler to the crime.

Likewise, in the case at bar, Fowler has failed to show that there is a

"reasonable probability" that, but for trial counsel's alleged errors, the result of his

trial would have been different, i.e., a probability sufficient to undermine

confidence in the outcome of  the proceedings.  Therefore, Fowler has not met his

burden of proof that he was prejudiced by counsel's performance.

## <u>CONCLUSION</u>

For the aforementioned reasons, Appellee respectfully requests that the

Order of the United States District Court for the Western District of Pennsylvania

entered on December 18, 2015 be affirmed.

Respectfully submitted,

<u>/s/Michael E. Burns</u>
Michael E. Burns, Esquire
Counsel for Appellees

## COMBINED CERTIFICATIONS

### Certificate of Bar Membership

I certify that I am a member of the Bar of this Court.

/s/Michael E. Burns
Michael E. Burns


### Certificate of Compliance

I certify that this brief contains  2,683 words.

/s/Michael E. Burns
Michael E. Burns


### Certification of Identical Briefs

I certify that the text of the PDF file and hard copies of this brief are identical.

/s/Michael E. Burns
Michael E. Burns


### Certification that Virus Check was Performed

I certify that a virus check was performed on this brief using

Symantec Endpoint Protection.

/s/Michael E. Burns
Michael E. Burns